Priest v. The State.

EDWARD PRIEST AND THOMAS WALKER, PLAINTIFFS IN ERROR, v. THE STATE OF NEBRASKA, DEFENDANT IN ERROR.

| 10 | 393 |
|----|-----|
| 12 | 63 |
| 17 | 360 |
| 18 | 404 |
| 28 | 38 |
| 10 | 393 |
| 36 | 40 |
| 10 | 393 |
| 51 | 344 |
| 10 | 393 |
| 58 | 799 |

1. **Criminal Law.** A plea in abatement to an indictment must state facts and not mere conclusions of law.

NOTE.—Where separate trials are awarded to parties jointly indicted, each is a competent witness for the state upon the trial of the other without being first acquitted or convicted, and without a *nolle prosequi* being first entered upon the indictment. *Carrol v. The State*, 5 Neb., 35. On an indictment for rape the prosecutrix is a competent witness, her credibility being submitted to the jury. A verdict of guilty on her testimony alone may be returned if the jury are satisfied beyond a reasonable doubt of the guilt of the accused. *Garrison v. The People*, 6 Neb., 283. Under the criminal code neither husband nor wife are competent to testify concerning any communication made by one to the other during marriage, but on a trial for larceny a witness was permitted to testify as to the contents of a letter which was in his possession and purporting to have been

2. ———: COMPETENCY OF WITNESSES. Where on a trial for murder an Indian was called as a witness for the prosecution, and in answer to questions by the attorneys for the accused, intended to test his capacity to understand the obligation of an oath, answered in substance that he meant to tell the truth, but failed to answer the questions propounded, *Held*, That it must appear that he had capacity to understand the obligation of an oath before his testimony could be received. The code has not changed the character of an oath, but permits all persons of sufficient capacity to understand its obligations to be witnesses.

3. ———: CONFESSIONS. A confession by A in B's absence that he and B committed a murder is not evidence against B.

4. ———: ———. A confession is not sufficient evidence of the *corpus delicti*. There must be other evidence that a crime has actually been committed, the confession being used to connect the accused with the crime.

**ERROR** to the district court for Dakota county. Tried below before BARNES, J.

*Isaac Powers, Jr.*, and *Thomas L. Griffey*, for plaintiffs in error.

The court erred in admitting the evidence of the witness Holly Scott, when upon the preliminary examination it appeared that this witness did not possess

written by the prisoner to his wife, there being no admission therein tending to show his guilt. *Geiger v. The State*, 6 Neb., 545, 549. It is not necessary to the competency of a witness called to testify as to what he heard the prisoner say, that he should have heard all he said on that occasion. If what he heard be sufficient to carry an intelligible idea respecting the commission of the offense it may be given in evidence against him. *Clough v. The State*, 7 Neb., 339. To make a confession evidence in any case it must appear that it was made voluntarily and without inducement of any kind. *Dodge v. The People*, 4 Neb., 230. And where a person, although he be subsequently charged with the offense, appears voluntarily and gives testimony before any accusation has been made against him, such testimony is admissible in evidence against him on the trial of an indictment for the crime. *Clough v. The State*, 7 Neb., 340.—REP.

sufficient capacity to understand the obligations of an oath, admitting that he did not know that it was wrong to swear to a lie, or that there was any responsibility attaching, either moral or legal, for so doing, possessing no conception of right or wrong, admitting that he was then a convict serving a term in the penitentiary of the state for a murder that he confessed to have committed, yet the district court permitted this testimony to go to the jury without any comments or instructions. The court should have instructed the jury not to convict upon this testimony, unless the same was corroborated. *Ray v. State*, 1 Green (Iowa), 316. *Martin v. State*, 28 Ala., 71. The verdict of the jury must be sustained, if sustained at all, upon this kind of testimony. We submit, that notwithstanding the fact that plaintiffs in error are Indians, and consequently considered by very many people in the west— and it seems considered by the jury that tried this case—that the only good Indians are dead ones, that if they are to be given a trial at all they should be accorded some of the rights that are given a white man when on trial for an offense. *Curtis v. Strong*, 4 Day, 51. *Jackson v. Gridley*, 18 Johns., 98. 17 Wend., 460. 7 Conn., 66. 5 Blatchf. (Ind.), 295. 5 Cranch., C. C., 38. 1 Brews. (Pa.), 356. And even a confession uncorroborated is insufficient to convict. *State v. Fields*, Peck (Tenn.), 140. *Bergen v. People*, 17 Ills., 426. *People v. Hennessey*, 15 Wend., 147. *People v. Badgley*, 16 Wend., 53. *People v. Ruloff*, 3 Park, 410. 39 Mo., 424. *Jenkings v. State*, 41 Miss., 582. The declarations of Holly Scott made to Aleck Payes, and not even made in the presence of defendants Priest and Walker, are not admissible in evidence on the trial of said defendants. *Britton v. State*, 4 Cold. (Tenn.), 173. 5 Iowa, 532. 30 Ga., 55. 18 Pick., 422. 39 Mo., 252. 2 Ill., 276. 16 Tex., 656.

*C. J. Dilworth, Attorney General,* for the State.

MAXWELL, CH. J.

At the March term, 1880, of the district court of Dakota county, the plaintiffs were tried for the murder of a white man on the Winnebago reservation, and convicted of murder in the first degree and sentenced to death. They prosecute a writ of error to this court. It is claimed that the court erred in sustaining the demurrer to the plea in abatement to the indictment. The plea, after setting out certain matter alleged to be prejudicial to the accused, which we deem unnecessary to notice, states "that the grand jury that found said indictment were not legally chosen and impaneled." It is said on the argument that the demurrer admits that such was the case. A plea in abatement should state facts and not mere legal conclusions. *State v. Brooks,* 9 Ala., 10. *Burley v. The State,* 1 Neb., 395. The plea should have pointed out wherein the grand jury were not legally chosen and impaneled, and as it failed to do so presented no issue, and the demurrer was properly sustained.

It is alleged that the court erred in admitting the testimony of Holly Scott. It appears from the bill of exceptions that Scott and the plaintiffs are Indians, and that Scott was convicted of the murder of a white man in the year 1879, and is now in the penitentiary, and that the plaintiffs were convicted on his testimony alone, he having testified that Thomas Walker, in the absence of Priest, confessed to him that he and Priest killed a white man on the reservation in the spring of 1879, and showed him where they had buried the body; and that he dug into the ground, at that place, which he states was in a ravine washed

out by the water, and found the breast of a white man; that Walker afterwards told him that they had cut off the head.

Section 328 of the code provides that "Every human being of sufficient capacity to understand the obligation of an oath is a competent witness in all cases civil and criminal. The following persons shall be incompetent to testify:

*First*—Persons of unsound mind at the time of their production.

*Second*—Indians and negroes who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them intelligently and truly." Gen. Stat., 581.

The preliminary examination of Scott, through an interpreter, was as follows:

Q. By Mr. Powers: Ask him (Scott) if he understands the obligation of an oath.

A. Yes, sir.

Q. Well, ask him what the consequences would be if he should testify to a falsehood. What he understands the consequences would be.

A. He says he can tell you something—that there has been murder.

Q. I am asking what the consequences would be for swearing falsely—telling a lie in this matter; not what he knows about the case.

A. He don't understand that about the swearing.

Q. He don't understand that?

A. Yes, sir.

Q. By the court: Ask him if he knows what would be done with him if he swears to a lie?

A. He says he swore that he was going to tell the truth—he was not going to tell lies.

Q. By Mr. Marks (acting prosecuting attorney): State whether or not you understand if you tell a lie in

this case that God the Great Spirit would be displeased with you?.

A. I will tell the truth; I don't want to tell any lies.

Q. State whether or not you understand that when you are called as a witness in this case you must tell the truth, the whole truth, and nothing but the truth?

By Mr. Marks: We ask the court to instruct the witness as to what are the legal consequences of his telling a lie in this case. Defendant's counsel object.

Q. By Mr. Powers: Ask the witness if he understands what the consequences would be if he should swear to a falsehood?

A. He don't know none. He don't know anything.

Q. By the court: You may ask the witness if the Indians have anything in their affairs which answers to or is like the oaths that we use?

A. He says that they had some kind of a way to have that—but still he was going to tell the truth; and he thought that he was going to ask a question right away; so he was waiting for you to ask the questions of him.

Q. By the court: Do you know that it is wrong to swear to a lie?

A. He don't know that. He says if you want him to testify he wants to know so; he wants to tell his evidence—that is all he is waiting for.

Q. By Mr. Marks: State whether or not you know that God the Great Spirit would be displeased if you should tell a lie?

A. He says he don't know that. He says he is sworn to tell the truth, and thought that he was going to tell his questions. That is about all that he was waiting for, he says. He says if God was going to dislike him, or anything of that kind, he didn't know it.

Q.  Is it a fact the witness understands that which he is going to tell us is the truth, and that he must not tell anything that is not the truth?

A.  He don't want to tell any lie.  He says he wants to tell the truth, and what he knows.

An oath is defined to be "an outward pledge given by the person taking it, that his attestation or promise is made under an immediate sense of his responsibility to God." 2 Bouv. Law Dict., 248.  The code has not changed the character of an oath, but permits all persons, of sufficient capacity to understand its obligations, to be witnesses.  But in this regard the examination of Scott failed to show his competency. Here was an Indian who, until convicted of the crime of murder, was still a member of a tribe.  It certainly was important that such a witness should, in his preliminary examination, show his capacity to understand the obligations of an oath.  His parrot-like repetitions, that he intended to tell the truth, were not responsive to the questions propounded, and fail to show that he was a competent witness.

But even if his testimony was admissible, it fails to implicate Priest in any manner.  Priest has made no confession, and the confession of Walker made in his absence is not evidence against him.  Nor is there sufficient evidence of the *corpus delicti*.  That a crime has actually been committed must necessarily be the foundation of every criminal prosecution, and this must be proved by other testimony than a confession, the confession being allowed for the purpose of connecting the accused with the offense.

In the case of *The People v. Hennessey*, 15 Wend., 147, it was held that a confession of embezzlement by a clerk would not warrant a conviction unless there was other evidence that an embezzlement had been committed.

And in *The People v. Parker*, 2 Park. Cr. R., 14, it was held in an indictment for blasphemy that there must be other evidence of the blasphemy than the mere confession of the accused.

In the case of *The State v. Stringfellow*, 26 Miss., 157, it was held that a confession of murder was not sufficient to warrant a conviction, unless the death of the person confessed to have been murdered was proved by other testimony. All experience has shown that verbal confessions of guilt are to be received with great caution. The danger of mistake from the misuse of words, the failure of the party to express his meaning, the misapprehension or want of recollection of the witness, or his zeal in pursuit of evidence, all admonish us to receive such testimony with great care. In the case at bar, the proof that a crime has actually been committed is not sufficiently definite and certain. No one is missing; there is no evidence aside from the alleged confession that any one' has been killed; and the fact that the state, as a part of its case, proved that the body was not found at the place designated by the witness Scott, or elsewhere, is a strong circumstance tending to show that it was never there.

A party cannot be convicted of a felony upon a mere suspicion. The law wisely requires the testimony to exclude all reasonable doubt, and while to a great extent the weight of testimony and degree of credibility to be given to the witnesses must be left to the jury, the court, where the verdict is unsupported by evidence, or is clearly wrong, will set it aside and grant a new trial. The judgment of the district court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED.