Owen, J.
Did the court below err in admitting, or refusing to withdraw from the jury, the testimony of Gros-.venor %
*176 The plaintiff in error maintains that the declarations of Stewart, in his absence, are but hearsay, and are inadmissible to establish, as against him, any fact material to the issue.
The state maintains' on the other hand, that as she was bound to prove Stewart’s guilt of the perjury, any evidence which would directly tend to establish this fact upon his separate trial, was admissible against the prisoner. It is further contended by the state, that as the giving of his deposition by Stewart was one of the substantive facts to be shown, what he did in preparation for, and leading to, this fact, was competent to be given in evidence, and that the interview between Grosvenor and Stewart was so immediately connected with the giving of his deposition, and so far characterized his conduct, as to become part of the res gestee.
There are some statements embraced in this interview which were admissible as tending to prove the state of Stewart's belief concerning the matters testified to by him, and which furnished the predicate of the perjury charged. It was necessary to prove that Stewart’s testimony, that he had seen Colonel Martin in Montana, was false to his knowledge.
Grosvenor said to him: “ If you swear to that, you will swear to what is not true.” His answer was that he knew nothing about Martin; that he was not going to swear to it.
These statements reflected upon the state of his belief— the condition of his mind — upon the very subject of the alleged perjury immediately prior to its commission. So far as his declaration tended directly to show the then present state of his belief concerning the subject of the perjury charged, it was, upon a very familiar principle, admissible in proof of his guilt. 'It related to a then existing substantive fact which the state was bound to prove and was not merely hearsay. 1 Greenleaf Ev. § 108; Queen v. Pym, 1 Cox’s Crim. Cases, 339.
But among the declarations objected to are some which did not tend either to show the state of Stewart’s belief; to be in preparation for, or lead up to, the act of perjury; nor did they accompany or characterize any act which directly pointed to his guilt. Grosvenor reports him as saying: “that he *177 might have made a good arrangement. . “ they have been fooling around me for some time, and at last they have a good arrangement made.” Yiewed in the light of the context these statements must have been understood by the jury as involving the prisoner (with Bowers) in some transaction of the past, looking to the hiring and suborning of Stewart to commit the perjury charged. They were at best but narrations of supposed transactions of the past, and if they were admissible at all against the prisoner, it must have been upon the ground contended for by the state, that as they involved confessions or admissions by Stewart pointing to his subornation by the prisoner, they tended to establish Stewart’s guilt and lienee were admissible against the prisoner. In support of this view, the state cites us to Revised Statutes, section 6804, which provides that: “ Whoever aids, abets, or procures another to commit any offense, may be prosecuted and punished as if he were the principal offender.” The claim is, that any evidence which would be competent to prove Stewart’s guilt, if he were upon his separate trial, is admissible against the prisoner.
The purpose of section 6804 was to hold an accessory before the fact equally guilty with the principal offender, and not to introduce into our erirpinal practice a new rule of evidence.
To permit the principal offender, by his mere private declarations or confessions, made in the absence of the accused, without the sanction of an oath, without opportunity to cross-examine him, without opportunity for the jury to observe his manner or deportment, or to judge of his motives, his means of knowledge, or his relation to the accused, whether hostile or friendly, to bind the latter (when such declarations or confessions do not tend to establish or characterize any substantive act or fact in issue) would seem, at first view at least, to require the support of strong authority.
We ai’e not without the light of adjudication to aid us in this inquiry. In the case of The Queen v. Read, 1 Cox’s Crim. Law Cases, 65, the prisoner was on his separate trial for procuring one Simpson feloniously to destroy a vessel belonging *178 to one Page. The prosecution offered in evidence the statements of Simpson made in the absence of the prisoner. Objections were made which were sustained ; Maulé, J'., remarking : “I have no objections to admit anything that Simpson did, but I cannot receive evidence of what he said. When two persons are tried together, what one of them has said is evidence, because he is on trial, but it is evidence only against him. If Simpson were jointly indicted with the prisoner, I could not of course reject his conversations, but they clearly would not be admissible as against tho latter.”
The case of Queen v. Pym, cited above, furnishes a strong illustration of the principle involved in this discussion, and of the distinctions above pointed out. The prisoner was on trial as an accessory to murder committed by one Hawkey. The prosecution offered to prove that Hawkey, while talking of the deceased to a friend, on the day of the murder, but before its commission, said (in the absence of the prisoner): “I will shoot him as-1 would a partridge.”
Erle, J., received the statement, remarking that he admitted that the confession of a principal is no evidence against the accessory, adding: “But this statement is an act indicating malice aforethought in Hawkey, and that is a fact which the jury have to ascertain. The intention of a person can only be inferred from external manifestations, and words are some of the most usual and the best evidence of intention. It is not a declaration after the act done narrating the past, but it shows the mind of the party.” See Reg. v. Hansill, 3 Cox Crim. Cas. 597. In Rex v. Turner, 1 Moody’s Cr. Cas. 347, it was held that: “ On an indictment against an accessory, a confession by the principal is not admissible in evidence to prove the guilt of the principal.” In Ogden v. State, 12 Wis. 532, it was held that: “ To sustain an indictment against a person charged as an accessory before the fact to the commission of the felony, it is necessary for the state to establish the guilt of the principal felon, as well as that the defendant was an accessory ; and confessions of the principal that he committed the crime, are not admissible as evidence of his guilt, upon the trial of the accessory ; such confessions being, as- to the latter, *179 only hearsay.” It was held in Sharpe v. State, 29 Ohio St. 263, that: “ On the trial of a person indicted under the 36th section of the crimes act (S. & S. 266) for procuring another to commit an offense, it is not competent to prove the declarations of the principal offender, made after the completion of. the offense, for the purpose of showing the guilt of the procurer.”
Greenleaf, in his work on evidence, vol. 1, § 232, concludes a discussion of this question with this proposition: “ In fine, the declarations of a conspirator or accomplice are receivable against his fellows only when they are either in themselves acts, or accompany and explain acts, for which the others are responsible; but not when they are in the nature of narratives, descriptions, or subsequent confessions.”
The principles declared above are supported by the following authorites: Fouts v. State, 7 Ohio St. 471; Rufer v. State, 25 Ohio St. 472-476; State v. Newton, 4 Harrington (Del.) 567; Patton v. State, 6 Ohio St. 468; Priest v. State, 10 Neb. 393; Gove v. State, 58 Ala. 391; State v. Thibeau, 30 Vt. 100. The case of State v. Rand, 33 N. H. 216, relied upon by the state, is not in conflict with these cases.
The statements of Stewart, so far as they justify the inference that the prisoner had been proposing or making some “ good arrangement ” with him concerning his testifying, were at best but the narration of something in the past, and are not within any of the exceptions to the rule which excludes mere hearsay testimony.
The concluding observation of Grosvenor to Stewart: “ I had a dispatch from Mr. Yohres ; Dilcher was trying to raise two hundred dollars on his check, and that is the reason I said what I did to you,” was not responded to by Stewart; it was not an accusation against Stewart; it was nothing that called for a response from him ; it was at best something Grosvenor had heard; it affected Dilcher alone, and that to his prejudice, and was too palpably inadmissible to justify serious discussion. These statements, being not only inadmissible, but plainly prejudicial to the prisoner,'should have been excluded, and in permitting them to go to the jury there was error, for which the judgment will be reversed.
*180 We find no other errors in the record to the prejudice of the plaintiff in error.

Judgment reversed.