Albaugh, J.
The plaintiff in error was indicted at the September term of the court of common pleas of this county with one Joseph Aidt for the murder of William D. Jones. The first count in the indictment charges, in substance, that Joseph Aidt did unlawfully, purposely, and of deliberate and premeditate malice make an assault upon the said Jones with intent to-kill and murder, and then and there with some unknown weapon did strike the said Jones in and upon the left side of the face and forehead, whereby he inflicted five mortal wounds- *631 from which he became insensible and helpless, and the said Aidt with the intent aforesaid then placed him in that helpless and insensible condition upon the railroad track to be run over by the cars, and that a train of cars did pass over him, thereby mutilating, crushing and bruising him, from which with the mortal wounds he had received before, he immediately died ; that said mortal wounds were inflicted by said Aidt in the manner aforesaid with intent to kill and murder.
It is then charged that Thomas Hotelling was present aiding, abetting and assisting the said Aidt in the commission of the murder.
The second count charges Aidt and Hotelling jointly with the commission of the murder in the manner and form set-forth in the first count.
The plaintiff in error was tried and convicted of manslaughter, and sentenced to the penitentiary for a term of years.
A motion was made for a new trial, and overruled, and a bill of exceptions taken embodying all the evidence and proceedings during the trial, and a petition in error is now filed tore-verse the judgment for errors alleged to have intervened upon the trial.
The great number of assignments of error alleged in the petition will prevent a reference to them in detail, and I will only refer to those which we consider of the most importance.in the case.
1. The first assignment of error is as to the sufficiency of the-first count in the indictment. This count charges Joseph Aidt with the murder of Jones, and that Thomas Hotelling was present, assisting, aiding and abetting. There is no averment that Hotelling was aiding and abetting with intent to kill, and it is contended that this averment is necessary under the statute. Under the common law, the intent or purpose to kill was not an essential allegation in an indictment for murder. The crime .consisted in the unlawful killing of a human being with malice prepense or aforethought, either expressed or implied; but in this state, the common law as to crimes having been entirely abrogated by statute, it is necessary that all the-essential ingredients of the crime as prescribed by the stat *632 ute should be set forth in the indictment. Fouts v. The State, 8 Ohio St. 98.
The section provides that whoever purposely and of deliberate and premeditated malice kills another is guilty of murder in the first degree. But while it is conceded that the intent or purpose to kill is a necessary averment to constitute the crime of murder under the statute, it is claimed that such averment is not necessary to charge the crime of aiding and abetting. Section 6904 provides that “ whoever aids, abets or procures another to commit any offense, he may be prosecuted and punished as if he were the principal offender.” The charge against plaintiff in error is that he was present aiding and abetting in the act alleged as perpetrated by the hand of Aidt, and it is necessary in order to ascertain the real charge against Hotelling, to recur to the averments in the indictment descriptive of the act committed by Aidt. The indictment must be complete, containing all the necessary ingredients of the crime, the description of the overt act, and every averment necessary to constitute the crime against the principal; and when this is done, the charge that the accused was present aiding and abetting in the act, is all that is required under the statute. In the Foutz case, cited by counsel for the accused, the objection to the indictment was that there was no averment of the intent or purpose to kill charged as against the principal, and the court held that this is a material ingredient in the crime of murder, and should be averred in the indictment. The indictment in the present case is not open to this objection; the charge against Aidt is complete, containing all the necessary averments in an indictment for murder in the first degree, and the charge against Hotelling for aiding and abetting contains all the necessary averments under that section of the statute.
2. The accused moved the court for an order requiring that the jury be kept together during the trial under the charge of an officer appointed by the court. This motion was overruled and exceptions taken. Affidavits were filed in support of this motion, tending to show that public sentiment was largely against the accused, and that the case was the subject of comment among the people attending the trial, and *633 upon the streets. These facts were controverted by affidavits filed on behalf of the State. To have sustained this motion would involve a finding from the proof offered that danger might be fairly apprehended that persons, either by design or otherwise, might drop remarks in the hearing of jurors which would influence their minds upon matters material to the trial. The extent of this danger would depend upon the general sentiment in the community, the notoriety of the case, and whether the circumstances would have a natural tendency to excite comment. We do not hesitate to say that in cases of such grave character, involving life or liberty, every safe-guard ■ should be adopted that would insure afair trial, and thatthe jury should not be permitted, under such circumstances, to mingle in free and ordinary intercourse with .the people, throughout a long and exciting trial. This is a matter, however, resting in the sound discretion of the court trying the case, and is not subject to review on error, unless it is clear that there has been an abuse of discretion.
3. It is claimed that the court erred in admitting certain testimony offered by the State, and. objected toby the accused. This testimony objected to was offered to prove that the wounds, cuts and bruises produced by the cars in passing over the body of the deceased, were mortal; and it is contended that this testimony was not competent, for the reason that there is no averment in the indictment that these were mortal wounds, and that in the absence of such averment, this proof was not competent. The indictment, among other things, charges that the wounds inflicted upon the side of the face and upon the forehead of the deceased by Aidt, were mortal; it is also charged that the deceased was rendered insensible by the blows so inflicted, and while in that condition he was placed by Aidt upon the railroad track, with the felonious intent that he should be run over and killed by the locomotive and cars; that he was so run over, and then and there cut, bruised and mutilated; of which said cuts, bruises and mutilations, as well as of the wounds so, as aforesaid, inflicted by the said Aidt, he, the said William Jones, then and there instantly died. It does not appear from any proof offered in the case, that the wounds *634 inflicted by Aidt were mortal. The testimony of the physician who examined the deceased immediately after he was found, is that they were not mortal; and the claim is made that inasmuch as the proof tends to establish the fact that the wounds charged in the indictment to have been mortal, were not so in fact, the State must fail. We think, however, that the indictment does substantially allege that the wounds caused by the cars, as well as those averred to have been inflicted by the blows, were mortal; the averment is in effect that the deceased instantly died of said cuts, bruises and mutilations, as well as the alleged blows given by Aidt. The averment that the deceased instantly died of the cuts, bruises and mutilations, is equivalent to the averment that the cuts, bruises and mutilations were mortal wounds.
4. Testimony was offered on behalf of the State during the trial, tending to show that the alleged murder was committed on or near the railroad track, about one mile east of Bucyrus; that about eleven o’clock that night, the prisoner Aidt, Jones and another, started from a saloon in the town, and walked on the railroad track to a Mrs. Deuchler’s house, about a mile east of town and a short distance from the railroad; that they remained at this house some time, when Jones said that he was going back to town; that the prisoner and Aidt left the house with him, and after remaining out some twenty minutes, returned to the house and staid there until morning; that they started for town in the morning about 'five o’clock, and found Jones on the east side of the road that crosses the railroad, on the cattle-guard, dead; that there was a cattle-guard on the west side of the road, and that blood had been seen on a tie that morning, about fifteen feet west of the west cattle-guard, and about sixty feet from the place where the body was found. The theory of the counsel for the State was, that Jones had been struck the fatal blows at the place where the blood had been seen, and placed upon the track on the east cattle-guard, where he was mangled by a train that passed soon after the -time they had left the house. The counsel for the State then moved the court for an order that the jury view the premises where it was claimed the murder had been committed; the prisoner objected, the *635 objection was overruled, and he excepted. The court made -the order that the jury be conducted to the place in a body, in ■charge of the sheriff and a person appointed by the court, to point out the premises; and gave instructions that no other persons should be permitted to speak to the jury upon any matter connected with the trial, while thus absent from the ■court room. The view was had, and the jury returned. This ■objection and exception is assigned for error. Sec. 7283 provides that whenever in the opinion of the court it is proper for the jurors to have a view of the place at which any material fact occurred, it may order them to. be conducted in a body, under the charge of the sheriff, to the place which shall •be shown to them by some person appointed by the court. And while the jurors are thus absent, no person other than the sheriff having them in charge, and the person appointed to show them the place, shall speak to them on any subject ■connected with the trial. Counsel for the prisoner contends that this section of the statutes is in violation of Sec. 10, Art. 1, of the constitution, which provides that “in any ■trial in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him; to have a ■copy thereof, and to meet the witnesses face to face * * * ”
■ We do not think it necessary to pass upon the question whether this statute is in violation of the constitution, unless its operation would necessarily preclude the accused from being present during the view of the premises. This it does not do. There is nothing to prevent him from being present, if permitted by the court, unless he would voluntarily waive «uch right. It is not only his constitutional right to be present during the trial, but sec. 7301 of the statute provides -among other things “that he shall not be tried unless personally present.” If the view of the premises was a part of the trial, it is certain he should have been present when the view was had. The very object in having the jury view the premises is to obtain facts material to the issue in the case ; -facts which they are supposed to be better able to obtain by .actual view than by the testimony 'of witnesses. The location of the place where the deceased was found; the distance *636 from the place where blood had been seen, to the place where-he was found ; whether the body could have been dragged over the west cattle-guard by the cars in passing over it; the east cattle-guard upon which the body was found; the location of the Deuchler house, were all material facts which was evidence in the case, and which was considered by the jury in determining the guilt or innocence of the accused. Again the statute provides that no persons other than the sheriff having the jury in charge and the person appointed to show them the place, shall speak to them upon any subject connected .with the trial; this implies that these persons may speak to the jury upon matters connected with the trial ; thus facts may be communicated to the jury by these persons, in the absence of the accused, in respect to objects and points material to the case. This is evidence given to the jury in the absence of the accused, and it is a part of the trial. The presence of the accused in a case involving life or liberty, that he may have an opportunity to observe the conduct of the jury, and of those persons in whose charge they are, may be of great importance to him. It is the humane policy of the law to guard the accused from the possibility of oppression in a .criminal prosecution. In Kirk v. The State, 14 Ohio, 73, after the jury was charged and had retired, one of the associate judges of the court went into the jury room in the absence of the defendant and counsel on both sides, and explained the charge to them. This was held to be error.. The court say “ that it is the right of the prisoner to have a public trial, that he shall meet the witnesses face to face before the public, and that all that can be said or preferred against him-and all that can be said or urged in his favor shall be in hearing and presence of the public; the witnesses shall give their testimony in public, and the court shall declare the law in public. In no other way can the jury be advised of a fact or principle of law touching the case. The court charged with his trial has no right to hold any communication with the jury touching his case except in the presence of the prisoner and before the public. It is his great privilege, and no person can impair it.” If the rights of the accused may be prejudiced by a communication made to the jury in his absence by a judge *637 before whom the case is tried as to matters of law, much more might his rights be prejudiced by the communication of facts to the jury in his absence by persons having them in charge during the time they are allowed to view the premises where it is alleged the crime was committed. We, therefore, think that the action of the court in overruling this objection in respect of this order and in permitting the jury to view the premises in the absence of the accused, was erroneous. State v. Bertin, 24 La. 46; Carroll v. State, 5 Neb. 31; People v. Lowry, 70 Cal. 193; Benton v. State, 30 Ark. 528; People v. Palmer, 43 Hun. 393. It is contended by the counsel for the State that the record does not show affirmatively that the accused was not present at the time the jury viewed the premises. This is no answer to this question. The record should show that he was present, and it is conceded in argument by counsel for the State that the prisoner was confined in jail at the time.
5. After the testimony on the part of the State closed, the prisoner moved the court to compel the prosecuting attorney to elect upon which count of the indictment he relied for conviction. This motion was overruled and exception taken. Afterward the prisoner requested the court to instruct and direct the jury to return a separate finding on each count of the indictment. This was refused and excepted to. A verdict was returned, “guilty of manslaughter, as charged in the indictment.” These propositions present the question whether a judgment upon a general verdict of guilty as charged in the indictment, where two or more offenses are charged, is erroneous. The charge of aiding and abetting is an independent and substantive offense, and the party may be convicted without the conviction of the principal. This indictment contains two counts, charging the prisoner with two offenses, aiding and abetting in the first, and as principal in the second ; but he may be convicted as principal upon either count, and the penalty is the same. In other words, each of the counts charges murder in the first degree, and a general verdict of guilty as charged is responsive to each count. In Bailey v. The State, 4 Ohio St. 442, it is held that where an indictment charges two or more distinct offenses, differing in their nature, or arising out of distinct and different transactions, the court may com *638 pel the prosecutor to elect upon which charge he will proceed. •But such election will not be required to be made when the several charges in the indictment relate to the same transaction, or are simple variations or modifications of the same charge with a view of meeting the proof. In Barton v. The State, 18 Ohio, 221, the accused was charged in one count with horse-stealing, and in another with grand larceny of other property. A general verdict was retu raed “ gu ilty as charged in the indictment,’’and it was held that the offenses could be joined-. In Wilson v. The State, 20 Ohio, 26, the accused was charged in one count with an assault with intent to commit murder, and in another with shooting with intent to kill. A motion to compel the prosecuting attorney to elect upon which count he would rely was overruled. This ruling was sustained, and the court held that where distinct offenses are charged in separate counts of an indictment, the jury must either return a general verdict or else respond to each charge in their finding. This being the rule, the plaintiff in error was not prejudiced by the ruling of the court in overruling the motion to compel the prosecuting attorney to elect, nor in the refusal to direct the jury to return a separate finding on each count.
6. Passing over a number of exceptions with the remark that we have given them all a careful consideration and find no error, we come to the last assignment of error, in which it is claimed that the verdict is not sustained by the evidence. It may be remarked that in the review of criminal cases upon this question it is the duty of the court to consider the evidence with the rule in view that if there is reasonable doubt as to the guilt of the accused, then the verdict is not sustained by the evidence, so that it is not a question simply as to the weight or preponderance of evidence in the case. If, then, we find that there is reasonable doubt as to guilt, it is our duty to sustain this assignment. The testimony as to the corpus delicti is entirely unsatisfactory. We might say that there is no testimony offered on that branch of the case to show that the deceased came to his death in any other manner than that of being mangled by a train of cars passing over him. There is no evidence of any wounds found upon the body that he might not have received *639 in that manner, and in fact it is fair to presume in the light of the testimony that they were so made; the scalp wound and the other wounds found upon the head and face, and those upon the feet,'would indicate that he was lying across the track at the point or place where the blood was seen upon the tie west of the west cattleguard, and that the body was dragged from that point by the cars to the east cattleguard where it was found. That he did not come to his death by wounds inflicted by the accused is quite clear from the testimony of the physician who examined him soon after he was found; he says that none of the wounds found upon the head were mortal, so that the inference is that death was caused by the train of cars passing over the body. Neither is there any testimony that he was placed upon the track by these parties, or that his death was caused by them, unless we so find from the alleged confessions testified to by the witnesses Shiffer, Curtain, and Dufraine. These witnesses were confined in the jail with the prisoner (two of whom were charged with felony, for which they afterward served terms in the penitentiary) at the time it is claimed that the prisoner made certain declarations to them indicating his guilt; one of these witnesses was brought back from the penitentiary to testify in the case, and another remained silent, as he says, until long after he had served his term, and the third was so successfully contradicted, that his testimony should not have been given any weight. But without commenting upon this testimony, it is of such uncertain character, coming from such an unreliable source, and given under such circumstances, that it would be unsafe to sanction' the conviction of a person of a crime involving life or liberty, in the absence of corroborating circumstances, and especially in the absence of testimony clearly showing that the deceased came to his death by violence at the hands of some person. “ Extra judicial confessions alone are not sufficient to prove the body of the crime, although they may be considered and taken for that purpose with other evidence in the case.” 10 Neb. 393; 46 Am. R. 259; 23 Ohio St. 146.
We think the. evidence was insufficient to support the verdict. For these reasons the judgment of the court of common *640 pleas will be reversed, and the cause remanded for further proceedings.
Gen. E. B. Finley, for plaintiff in error.
Harris & Wickham, for defendant in error.