CHARLES E. ANDREWS *et al. vs.* R. I. HOSPITAL TRUST CO.
*et al.*

JONATHAN ANDREWS *vs.* R. I. HOSPITAL TRUST CO. *et al.*

MARCH 10, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, and Rathbun, JJ.

*(1)   Jurors.*

Where it does not appear that a party was in any way prejudiced by the manner in which the jury list was made up, a motion to quash the list was properly overruled, for a party cannot demand that a juror shall be a resident of any particular city or town of the county, for if he receives an impartial trial, that is all he can require.

*(2)   Wills. Evidence.*

On a probate appeal, evidence that the parents of testatrix were interested in a charity, to which testatrix gave a large bequest, was properly admitted as furnishing some reason for her own bequest.

PROBATE APPEAL. Heard on exceptions of appellants and overruled.

SWEETLAND, C. J.   The above entitled causes are appeals from a decree of the Probate Court of North Smithfield admitting to probate certain instruments as the last will and testament and two codicils thereto of Dency A. Wilbur, late of North Smithfield, deceased.

The appeals were consolidated and tried in the Superior Court before Mr. Justice BROWN sitting with a jury and resulted in a verdict sustaining said instruments as the last will and codicils of the testatrix. The appellants duly filed their motions for a new trial which were denied by said justice. The causes are before us upon the appellants' exceptions to the decision of said justice upon the motions for new trial and upon exceptions to certain rulings of said justice made in the course of the trial.

Said appeals were placed upon the list of those causes in the Superior Court, sitting for the counties of Providence and Bristol, which were to be tried in the city of Woonsocket. At the opening of the trial of said causes and before the drawing of jurors the appellants moved to quash the list of jurors summoned for service at the trial, on the ground

that they had not been selected legally. This motion was denied. The appellants now urge their exceptions to the ruling of said justice. It appears that on Thursday, May 20, 1920, said justice set down these appeals for trial on Monday, May 24, 1920, and that late in the afternoon of said Thursday the jury commissioner received an order from the Superior Court to summon a list of forty jurors from which the panel for this trial was to be drawn. The jury commissioner for valid practical reasons summoned forty jurors from the cities of Providence, Pawtucket and Central Falls and none from the other cities and towns of the counties of Providence and Bristol. Ordinarily, when the time within which the summons for jurors must be served permitted, the jury commissioner was accustomed to summons jurors to serve at Woonsocket from more of the cities and towns of said counties than he did in this instance, but never from all. The ordinary practice of the jury commissioner in this regard tended to equalize the burden of jury duty among the cities and towns and was a reasonable performance of his duty; but it was not required by any provision of the statute. When, as in this case, the necessities of the situation required him to depart from his usual custom, such departure did not render the jury list invalid, provided a fair and impartial jury might be obtained therefrom. The appellants do not claim that the jury impaneled to try their appeals was not fair and impartial and it does not appear that the appellants were prejudiced in any way by the manner in which said jury list was made up. It has been held by this court that "a party has no vested interest in the selection of a particular juror," nor can he demand that a juror shall be a resident of any particular city or town of the county, for if he receives an impartial trial that is all he can require and with that he must be content. *McHugh* v. *R. I. Co.*, 29 R. I. 206; *Stevens* v. *Union R. R. Co.*, 26 R. I. 90; *Fiske* v. *Paine*, 18 R. I. 632; *Shepard* v. *N. Y., N. H. & H. R. R. Co.*, 27 R. I. 135; *State*

v. *Fidler,* 23 R. I. 41. This exception of the appellants should not be sustained.

The appellants' exceptions to the denial of their motions for new trial should be overruled. The appellants' reasons of appeal are based upon their claims that the testatrix was induced to execute said will and codicils through fraud practiced upon her by one George W. Lothrop and by undue influence exercised upon her mind by said Lothrop. It appeared in evidence that Miss Wilbur never married; that after the death of her parents she and her unmarried sister Hannah lived together in the family homestead until the death of Hannah in 1909 and from that time until her own death in 1919 the testatrix continued to live in the homestead unaccompanied by any member of her family; that she had no relatives except distant cousins, with most of whom her association was not intimate; that said George W. Lothrop and his family had been near neighbors of the testatrix and her sister for very many years and that relation continued down to the death of the testatrix. The diary of the testatrix, kept by her with regularity for many years, was in evidence and it shows that during a period from long prior to the execution of the will in 1909 and continuing to the year of her death the testatrix entertained feelings of friendship amounting to sincere affection for the members of the Lothrop family. The evidence warrants the statement of Mr. Justice BROWN in his decision upon the motions for new trial that, "It is difficult to conceive of more intimate relations existing between two families who are not blood relatives." From the evidence the jury might find that Miss Wilbur before and at the time of the execution of said will and codicils was a woman of high character and very gentle nature, kindly and considerate towards others, but with a vigorous mentality and will, having business capacity and executive ability; that she was particularly interested in certain religious and charitable institutions and activities and that she took an active part in their management. Her estate amounted to between two hundred and twenty-five

and two hundred and fifty thousand dollars. By the instrument purporting to be Miss Wilbur's last will and the codicils thereto she gave the great bulk of her property to various charities and, in addition to some bequests to her relatives, she gave Mr. Lothrop and his wife her homestead estate and the sum of ten thousand dollars each, and to their three daughters the sum of five thousand dollars each. From the evidence the jury might reasonably find that, although the testatrix consulted Mr. Lothrop upon business and other matters and had respect for and was influenced by his judgment and advice, such influence fell far short of coercion or restraint destroying her free agency. Said justice very carefully instructed the jury upon the law relating to the issues raised by the appellants' claims of fraud and undue influence. The jury's verdict that said instrument represented the free will of Miss Wilbur, supported by the approval of said justice, will not be disturbed by us. We think said justice was warranted in holding with reference to the appellants' claims that "acting upon the evidence the jury could not well have reached a finding sustaining such contention."

The appellants excepted to the rulings of said justice permitting the proponents of the will to introduce evidence that the father and mother of Miss Wilbur were interested in the work of the Woonsocket Hospital, to which institution a large bequest was made in the will of Miss Wilbur, and also evidence that her father had made gifts to the hospital during his life. The introduction of this testimony was proper as furnishing some reason for her own bequest although there was abundant testimony that Miss Wilbur herself was deeply interested in the service of this charity.

The appellants also insist upon their exceptions to the following rulings of said justice refusing to admit certain testimony offered by the appellants. He rejected testimony as to who had charge of the funeral arrangements of Miss Wilbur's father in 1889, as to whether Mr. Lothrop had influence over Hannah, the sister of the testatrix, who died in 1909, as to who had charge of the arrangements for the

funeral of Miss Wilbur; and said justice ruled out the following question asked of the witness Mrs. Slocum, a neighbor of the testatrix, "Which of the two, Mr. Lothrop or Miss Wilbur, had the ability to control the other by will power?" These rulings of said justice are without error.

The appellants sought to develop before the jury their theory as to a compelling power which Mr. Lothrop had acquired over the mind and will of Miss Wilbur, destroying her free agency and forcing her to execute these instruments in accordance with his wish. This theory was as follows: that Mr. Lothrop had carried on an improper intimacy with Hannah, the sister of the testatrix, that this became known to the testatrix and thereby through fear of his disclosure of such intimacy Lothrop had acquired a sinister power over the testatrix which he exercised to force the making of these instruments. The appellants were permitted to introduce certain testimony as to the relations of Lothrop and Hannah, from which the appellants sought to have inferences drawn in support of their theory. Most of this testimony, if true, is consistent with an innocent relation existing between friendly neighbors. The jury might well have found that no impropriety had taken place and further that whatever had been the nature of these relations they were unknown to the testatrix and in no way affected the provisions of these instruments. The jury apparently disregarded this fanciful claim, built upon conjecture, which was inconsistent with the mass of the testimony as to the relations of the testatrix and the Lothrop family. The appellants lay great stress upon their exception to the refusal of the court to reinstate the testimony of the witness Ferrier which had been stricken out as too remote. This testimony was to the effect that about twenty years before the execution of this will he had seen Lothrop and Hannah Wilbur together in the Lothrop house when the other members of the Lothrop family were away from home and that Lothrop had sent him out of the house to work in the barn. The ruling of the justice was without error. The testimony in question

was remote in point of time and also was without bearing upon the issues involved. Whatever might be said of this occurrence, if established, it never came to the knowledge of the testatrix and must have been unconnected with any influence which Lothrop had acquired over the mind of the testatrix, even if the jury should accept the unusual psychological theory of the appellants.

The appellants' exceptions are all overruled and the appeals are remitted to the Superior Court for further proceedings following the verdict.

*Walling & Walling (Raymond T. O'Neil, of counsel). Charles A. Walsh (Walter J. Hennessey, of counsel), for appellants.*

*Tillinghast & Collins (James C. Collins, Harold E. Staples, of counsel), for appellees.*