BURLEY *v.* THE STATE.

---

# Burley v. The State.

Per MASON, Ch. J.

1. PRACTICE: *Called terms: Records in criminal cases.* In a criminal case for felony, in which the indictment or other proceedings are had at a called term of the court, the record should show the request made by the county commissioners to the judge for the term, the order of the judge thereon, and the due publication of notice of the holding of the court.

2. ——: *Record in criminal cases* for felony should show that a venire for summoning the juries has been issued to the sheriff and been by him executed, or that the court, by its order, directed the summoning of the juries.

·3. ——: ——. The record should also show that the prisoner was present at and during the trial, and at the rendition of the verdict.

4. ——: *Waiving a right.* Nor can the prisoner waive his right thus to be present when on trial for a capital felony.

Per LAKE, J.

1. PRACTICE IN CRIMINAL CASES: Section 166 of the Criminal Code, as enacted while Nebraska was a Territory, providing that the indictment shall run in the name of " The Territory of Nebraska," is modified by the clause of the constitution which provides that it shall run in the name of " The People of the State of Nebraska."

2. ——: *Called terms.* It is not necessary that the record should show affirmatively that every step was taken to convene the court at a called term, in order to support the proceedings had thereat, providing enough appears to establish the facts.

3. ——: *Pleading.* A plea to the jurisdiction which only alleges conclusions of law, and not facts adverse to the jurisdiction, is not good.

4. ——: ——.—It is error to put a prisoner upon his trial before he has plead to the indictment.

5. ——: ——. But if the defendant plead " not guilty," and afterwards file his motion to quash and plea in abatement and they are determined, and the trial proceeds without a renewal of the plea of " not guilty," the presumption is that it, as first interposed, was not withdrawn.

6. ——: *Evidence.* It is error to refuse to permit, on cross-examination, a question as to his being intoxicated being put to a witness, who, on his direct examination, has testified to acts and declarations of the accused

BURLEY *v*. THE STATE.

and the deceased before the homicide, which tend to fasten guilt on the former.

7. ——: *Filling vacancies in juries.* It is error to fill vacancies in the grand jury from the list of persons summoned as petit jurors, and it is not material whether any injustice was thereby suffered by the prisoner.

This was an indictment for murder. Its caption was thus :

" THE STATE OF NEBRASKA, } *ss.*
    *Lincoln County,*

Of the November term of the District Court of the Third Judicial District, held in and for the county of Lincoln pursuant to appointment and notice of his honor L. CROUNSE, judge of said district, in the year of our Lord, 1868."

Attached to the record, but apparently not a part of the transcript certified by the clerk of the District Court, are the following papers : A copy of an affidavit made by Charles L. Jenkins, of the publication, for forty days prior to November 2d, 1868, in the Omaha Republican, a newspaper published at Omaha, of a notice given by "L. CROUNSE, judge Third Judicial District," that a term of court would be held at North Platte, in and for Lincoln county, commencing on the 25th day of November, 1868 ; a copy of the proceedings of the county commissioners of said county, ordering that Judge CROUNSE be requested to hold such term of court ; an order made by Judge CROUNSE thereon that such term be held.

The record did not show that any venires for the grand or petit jurors had been issued or that the court had made any order that they be summoned, but recited that "thereupon O. O. Austin, sheriff of said county, made return of the following grand jurors as having been regularly summoned." It also showed that the persons thus summoned appeared, when seven were excused, and " a like number

BURLEY *v.* THE STATE.

from the list of petit jurors transferred to complete the panel of grand jurors." This indictment was returned on the 26th of November, 1868. On the 30th of the same month the defendant was arraigned and plead " not guilty," without prejudice to his right of interposing any other plea. He, on that day, filed his motion to quash the indictment which, after argument, was overruled. Thereupon he filed his plea to the jurisdiction, which was also overruled. The venue was then changed by the court to Dodge county.

The trial was had at a special term of the District Court for Dodge county, commencing on the 28th day of December, 1868. No plea of " not guilty " was interposed, except that mentioned above. The trial commenced on that day and the taking of testimony was continued through that and the two following days, and on the 31st the jury returned a verdict of guilty. The record did not show that the prisoner was present at any time during the trial, or at the rendition of the verdict.

On the trial three witnesses severally testified that they were at dinner at the shanty where the killing took place; that the deceased then said that he was going to try to buy eight mules for $800. He drew from his pocket book a fifty dollar bill to make a bet with the prisoner, who took and returned it to him, and, with a sinister look, asked him if he had more, to which he replied that he had. After dinner the witnesses left the shanty, the deceased and the prisoner remaining alone, and went to work chopping wood about four hundred yards distant, when they heard a pistol shot. They then went to the cabin and found the deceased shot dead. They afterwards found his pocket book lying open on the ground two hundred yards distant.

On cross-examination by the prisoner's counsel, they were asked if they drank intoxicating liquors at dinner. Objection was made to the question which the court sustained, and the prisoner excepted.

Burley v. The State.

The cause was brought here by writ of error.

*C. H. Brown*, for the plaintiff in error.

I. There was error on the part of the court below in overruling the motion of the accused to quash the indictment.

1. The presentation of the accused in the indictment is in the name of The People. It should have been in the name of the State of Nebraska.—*Sec.* 10, *Constitution of Nebraska, title " Judiciary;" Sec.* 1, *Id. " Schedule;" Sec.* 166, *Criminal Code.*

2. The indictment purports to have been found at a November term of the District Court for Lincoln county. Such a court is not known to the laws of our State.—3 *Session Laws of State, page* 50, *sec.* 5, 6, 7, 8 ; *Wharton's Precedents of Indictments and Pleas, page* 1.

3. All the allegations necessary to confer full authority and jurisdiction upon the court should be apparent, and fully set forth in the indictment.—*Wharton's Crim. Law, sec.* 223 ; 1 *Bish. Crim. Pro. sec.* 152.

II. It was error on the part of the court below, overruling and dismissing the plea to the jurisdiction of the court.

1. It was a sworn plea and tendered to the court facts raising an issue, and should have been answered by the State by demurrer or replication. The issue thus raised should have been tried and judgment rendered thereon, if against the accused, with right to plead over.—*Wharton's Crim. Pro.* 657 ; *Adams* v. *The People,* 1 *Com.* 173 ; *Adams* v. *The People,* 3 *Denio,* 190 ; 1 *Bish. Crim. Pro. sec.* 479 ; 1 *Arch. Crim. Pro.* 370 ; 1 *Chitty Pleadings,* 480 ; 1 *Chitty on Crim. Law,* 437.

III. The record shows error in this, that the defendant in the court below was tried without having plead to the

BURLEY v. THE STATE.

indictment. This made no issue to the jury.—*Wharton's. Crim. Law*, 430; 1 *Arch. Crim. Plead.* 666, 351, *n.*; *Nebraska Crim. Code, sec.* 188.

IV. The court below erred in excluding from the jury competent and legal evidence.—1 *Greenleaf Evi.* 201, 215, 218; 2 *Rus. on Crimes,* 867; 1 *Phil. on Evi.* 406, 407; *Roscoe's Crim. Evi.* 55.

*E. F. Gray,* for the People.

I. It is in the discretion of the court to hear the motion to quash, while the plea of not guilty remains on the record.—1 *Bish. Crim. Pro.* 447 *and note a.* As to objection to jurisdiction after plea.

II. Evidence of drunkenness only admissible when some provocation is shown, and then only in those States where there is "murder in the second degree." Such evidence "may only be admitted when there is passion excited by inadequate provocation."—1 *Whar. Crim. Law, note p. to sec.* 41.

III. "Where an admission of a party to the action is proved against him, he may prove, on his part, the whole of the conversation at the time so far as it qualifies the admission, but no farther. His declaration at the time, upon the general merits of the case, cannot be proved in his favor."—2 *Abbott's N. Y. Digest,* 694, *sec.* 1140, 1141; *Brouner* v. *Goldsmith,* 1 *Am. Law Reg.* 47; 1 *Phil. Evi.* 407; *Cowen & Hill's note,* 118.

MASON, Ch. J.

The defendant, in the court below, was indicted at a called term of the District Court sitting in and for Lincoln county, commencing on the 25th of November, 1868, for the murder of Charles Colliton. The term of the court was called

at the request of the county commissioners, and notice of the term so called published in the Omaha Republican. The affidavit of the printer attached to the order of the judge calling the term was sworn to, as shown by this record, at Omaha city, on the second day of January, 1868. The affidavit itself says, the printed notice attached was published in the Omaha Republican for forty consecutive days next prior to the 25th day of November 1868. Neither the request of the commissioners of Lincoln county nor the note of the judge appointing the term, is set out in the record ; neither do either of said papers appear to have been filed in the Lincoln county District Court. I do not think they could have been so filed, as the affidavit of the printer was, doubtless, made on the second day of January, 1869, instead of 1868, and a copy of the notice or order of the judge calling the term, then and there attached.

The term of the court at which the defendant was indicted being a called term under the statutes, does the record show that the necessary steps were taken to constitute a legal term of the court? The fact may be, and doubtless is, that the necessary request and order was made and notice given, but does this record show that fact? The statute under which this term of the court at Lincoln was called, Laws of 1867, page 50, requires certain things to be done. Can we presume they were so done unless the record discloses the fact?

It does not show that a precept for summoning the petit jury was returned into court, or that said jury were summoned by the sheriff under the order of the court. Our statute requires the clerk to issue an order to the sheriff, deputy sheriff or coroner, as the case may be, commanding him to summon the persons whose names have been drawn as jurors. The manner of selecting and drawing the jury is clearly pointed out in sections 658, 659, 660, Code. Section 664 provides for the emergency which may, and

and often does, happen when the proper officers fails to summon a grand or petit jury. One of the modes referred to in that section should have been pursued, and it may have been, but the record does not disclose that fact. There is no mention of a venire or order of the court commanding any one to summon a jury, but the record, after reciting the fact of the commencement of the court and that the cause came on to be heard, proceeds as follows : . "Then and there came a jury of twelve good and lawful men of the body of the county of Dodge, and were duly impannelled and sworn to well and truly try and true deliverance make between The People of the State of Nebraska and John Burley, the prisoner at the bar, whom they shall have in charge, and a true verdict give according to the evidence."

In New York it was deemed good cause for reversal of a capital judgment against the defendant, rendered at the court of Oyer and Terminer, that no precept summoning a petit jury was returned and filed.—*McGuire* v. *The People,* 2 *Parker, C. C.* In another case, when the county commissioners are to draw the jury, and process is issued to the sheriff to summon them for the court of Oyer and Terminer, it is error if the record does not show, either expressly or by necessary inference, that the jury have been legally drawn.—*Eaton* v. *The Commonwealth,* 6 *Penn.* 73.

Another startling defect in the record before us is, that it does not show, nor can it be rightfully inferred therefrom, that the prisoner was present at the rendition of the verdict. In a capital felony it is not in the power of the prisoner, either by himself or his counsel, to waive the right to be present at the rendition of the verdict or during the trial. Such is the rule laid down by that eminent jurist, Chief Justice GIBSON, in a case when the prisoner was indicted for burglary and larceny, and expressly waived, by his counsel, the right to be present at the rendition of

the verdict, and a verdict was given against him in his absence. The judgment thereon was reversed. It would be contrary to the dictates of humanity to let a prisoner waive that advantage, which a view of his sad plight might give him, by inclining the hearts of the jurors to listen to his defence with indulgence.—*Prine* v. *The Commonwealth,* 6 *Harris' Penn.* 103. The record shows that the prisoner was in court on the 28th of December, 1868, and no mention is again made of him until he is brought up for sentence, on the first day of January, 1869. The verdict was returned by the jury on the 31st day of December, 1868, and it does not show he was present in court at that time. He may have been, but it is not here a question of fact whether he was or not, but only a question whether the record shows his presence. For these reasons, I think, the sentence and judgment of the court below should be reversed.

LAKE, J.

At a called term of the District Court for Lincoln county, held at North Platte on the 25th day of November, 1868, the plaintiff in error was indicted for the crime of murder. At the same time a motion was made by the prisoner for a change of venue which was allowed, and the cause removed to Dodge county for trial. A special term of the court was called by the judge of that district for the trial of the case. Upon the trial to a jury the prisoner was convicted, and the sentence of death pronounced against him.

The case is brought here by writ of error to reverse that judgment. It is claimed that several errors intervened, as well during the trial to the jury as in the determination of numerous questions of law by the court, before the case was transferred to Dodge county. We will consider them in the order of their assignment.

It is claimed that the court erred in overruling the motion to quash the indictment.

It is objected to the indictment that it runs in the name of "The People of the State of Nebraska," whereas it should run in the name of "The State of Nebraska," and it is insisted that in this it is repugnant to section one hundred and sixty-six of the Criminal Code, which gives the form of the commencement of an indictment to be substantially followed. It should be borne in mind that this provision comes to us as a portion of the late territorial statutes, continued in force by section one of the schedule of the constitution, and is subject to all the necessary modifications imposed by that instrument, one of which is that "all process, writs and other proceedings shall run in the name of "The People of the State of Nebraska." This indictment conforms to this command of the constitution, as it most certainly should do, and there is no force in this objection.

It is further objected that this indictment purports to have been found at the November term of the District Court for Lincoln county, whereas, in fact, no such term of said court is known to the law. It is true that no term of said court for Lincoln county has been actually fixed by the legislature, but there was at that time a public law in force under which this court appears to have been called and held. Section 7, act approved June 12, 1867, entitled "an act to define the boundaries of the judicial district, and to assign justices to the same."

Now, a term called and held under the provisions of this act is as well entitled to be designated a regular term, as if the time for holding it had been actually fixed by the legislature. The record before us shows that the court in Lincoln county, at which this indictment was found, was duly called and held under the authority of this act. It is true that the record is somewhat irregular, but enough

appears to clearly establish these facts; that the county commissioners of Lincoln county, at an adjourned meeting held on the 5th of October, 1868, in an official manner, made application to the judge of that district for a term to be held in that county, and thereupon, in compliance with this request, he fixed upon the time, gave the necessary notice, and held the court accordingly. The indictment itself alleges that the term was held pursuant to application and notice by the judge of that district, and the record elsewhere shows that he had been duly requested to do so. But it is insisted by counsel for the prisoner that the indictment itself should contain all the necessary averments, to show, affirmatively, that the term was called in the exact manner required by law; in other words, that it show that the county commissioners and judge have taken every step which the statute requires of them. To this proposition we cannot assent. The District Court possesses general jurisdiction, and all that the caption need contain is found in section 166 of the Criminal Code, as modified by the constitution. The record showing, as it does, that the county commissioners requested a term to be held, and that in pursuance of such request this term was appointed, notice given, and the court actually convened in pursuance thereof, it is sufficient for the caption to show, in general terms, as this does, that the court was held pursuant to appointment and notice. We will presume in favor of the regularity of all the steps taken, until the contrary is made to appear.—*State* v. *McCarty*, 2 *Chand.* 199. It is unnecessary to notice the rest of the objections urged to this indictment in the motion to quash, as they are sufficiently answered by what has already been said.

Another objection is that the court erred in overruling the defendant's plea to the jurisdiction. This plea appears to have been resorted to for the purpose of presenting, in another form, the same question which the court had deter-

mined in overruling the motion to quash. The jurisdiction of the court is challenged by stating legal conclusions merely. No fact is stated which can be considered as entitled to any weight whatever, and the plea was properly disposed of.

Another error assigned is, that the prisoner was put upon his trial without having plead to the indictment. If this were true, it would be error. But does the record show this was done? It discloses the fact that the plea of "not guilty" was interposed by the defendant on his arraignment. But it is urged, with much force, that inasmuch as a motion to quash, and a plea in abatement were afterwards filed and acted upon by the court, the presumption arises that the plea of "not guilty" must have been withdrawn before they were filed. If the subsequent pleas were inconsistent with the plea of not guilty, this might be true. But they were not, and the record being silent on this point we must presume that the motion to quash and the plea in abatement were filed and determined, with the plea of not guilty upon the record.—1 *Bishop's Crim. Pro.* 437, 447; *Commonwealth* v. *Chapman*, 11 *Cush.* 422.

The next error assigned is, that the court refused to permit certain questions to be put to three of the witnesses, called by the prosecution, on their cross-examination.

Of these witnesses, John Rice and John Fritchie, who, together with the prisoner, the deceased and several other persons, took dinner at a shanty near which, and a short time before, the deceased was killed, on their direct examination, had testified to certain acts and declarations of the prisoner and deceased, tending to establish defendant's guilt, and on cross-examination they were asked certain questions tending to show that they were intoxicated at that time, but objection being made by the attorney for the State, the testimony was excluded from the jury. In this we think there is error. It is always of vital import-

ance to ascertain the exact condition of the mind of a witness at the time of a transaction or conversation about which he is testifying. The jury should be informed of all the influences affecting his mind, so as to enable them to determine whether it was in such a condition as rendered him capable of understanding, recollecting and narrating correctly what actually took place. And if for any reason, such as imbecility or excessive intoxication, the witness was in such a state of mind as rendered him incapable of exercising a correct discrimination, the court and jury should know it. In rejecting this testimony, we are of the opinion the court was in error.—2 *Phil. Evi. Cown and Hill and Edwards' notes,* 950, *note* 596, *and cases there cited.*

There is one other point deserving notice. The record discloses the fact that several persons summoned as grand jurors having been excused from serving, their places were filled by the court by transferring from the list of petit jurors enough to make up the requisite number. This was unauthorized by the law, and rendered the grand jury, when thus organized, an illegal body. Section 664 of the Code of Procedure, regulates the filling of vacancies in both grand and petit juries. It provides that in such case "the court may order the sheriff, deputy sheriff or coroner, to summon, without delay, good and lawful men having the qualifications of jurors, and each person so summoned shall forthwith appear before the court and, if competent, shall serve on the grand and petit jury, as the case may be, unless such person shall be excused from serving or lawfully challenged." Although in this case it is not claimed or even suggested that any injustice was done the prisoner by this irregularly selected jury, still we cannot shut our eyes to the fact that it would be a most dangerous precedent, if permitted to stand. If so wide a departure from the statutory mode of selecting grand jurors were adjudged to be an unimportant informality, to be disregarded, where could

BURLEY *v.* THE STATE.

we stop? Could not every provision of the law be disregarded with just as much reason, and the judge select the jury in his own way, and of the material best suited to the accomplishment of his own purposes? The grand jury must be selected in the manner prescribed by the law. There is no security to the citizen but in a rigid adherence to the legislative will, as expressed in the statutes made for our guidance.

The judgment is reversed and cause remanded to the District Court for Lincoln county, for further proceedings.