STATE *vs.* JOSEPH J. MULDOON *et al.*

STATE *vs.* LAWRENCE A. FLYNN *et al.*

STATE *vs.* ERNEST QUINTIN *et al.*

STATE *vs.* JOSEPH P. FOLEY *et al.*

STATE *vs.* HAROLD J. GRAHAM *et al.*

STATE *vs.* ALFRED A. VARONE *et al.*

STATE *vs.* OWEN E. FLANAGAN *et al.*

STATE *vs.* ALBERT B. BAILEY *et al.*

STATE *vs.* THOMAS H. GORMAN *et al.*

STATE *vs.* EDMUND FLANAGAN *et al.*

STATE *vs.* LOUIS F. MCCAUGHEY *et al*

STATE *vs.* WILLIAM F. FOLEY *et al.*

STATE *vs.* J. EVERETT MCCABE *et al.*

STATE *vs.* EUGENE LAMARRE *et al.*

STATE *vs.* FELIX J. BLAIS *et al.*

STATE *vs.* HAROLD R. ABRAMS *et al.*

STATE *vs.* VINCENT J. HERCHEN *et al.*

STATE *vs.* RAYMOND J. ADAMS *et al.*

JUNE 18, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CAPOTOSTO, J. The foregoing cases, which were certified to this court in accordance with the provisions of general laws 1938, chapter 545, § 6, as amended, are eighteen indictments that were returned to the superior court of this

state for the counties of Providence and Bristol on February 12, 1940, by a grand jury which had been summoned, impaneled and sworn in said court on September 18, 1939. Each of these indictments charges that the defendants therein named, in the city of Pawtucket, county of Providence, conspired to violate the election laws of this state in the general election of November 8, 1938. Since each indictment presents the same questions, we will treat them as if there were only one indictment before us. Furthermore, the word defendant, as hereinafter used by us, will refer to each and every defendant named in each of these indictments.

Upon the return of this indictment, the defendant filed a plea in abatement and a motion to quash in which he set forth, as grounds for dismissing the indictment, that certain members of the grand jury which returned the indictment were illegally drawn; and further, that certain members of the grand jury, residents of Bristol county, were ineligible to serve thereon. The state demurred to the plea in abatement.

No action of any kind was taken in the superior court in this case on the demurrer to the plea in abatement and motion to quash until March 21, 1941. On that date, acting under general laws 1938, chapter 545, § 6, as amended by public laws 1940, chapter 941, the attorney general filed a statement in this case setting forth that, prior to the trial thereof on its merits, certain questions had arisen therein which, in the opinion of the attorney general, were of such doubt and importance and so affected the merits of the controversy that they ought to be determined by this court before further proceedings. He therefore requested the superior court to certify said questions to this court for determination.

On March 24, 1941, the attorney general filed a motion in the case for certification of said questions, and on March 31, 1941, an order was entered by the superior court certifying said questions to this court for determination.

It may be observed here that, because of a change of administration following the general election of 1940, the present attorney general was not the attorney general who was in office when this indictment was returned to the superior court in February 1940.

The questions certified to us, stripped of legal phraseology, in substance are as follows:

(1) Is this indictment invalid because eleven of the twenty-two persons who served as members of the grand jury which returned. this indictment—all of said eleven persons being residents and electors of *cities* in the county of Providence, when summoned, impaneled and sworn on said grand jury—were not drawn and qualified for service as grand jurors by the jury commissioner or by an assistant jury commissioner of the state in accordance with the provisions of public laws 1939, chapter 700, which was in force at the time they were sworn, but were drawn and qualified as grand jurors by the clerk of the superior court for the counties of Providence and Bristol in May 1939, in accordance with G. L. 1938, chap. 506, which was in force prior to the time when said chap. 700 became operative?

(2) Did the presence on said grand jury of the eleven persons described in question (1) so violate the constitutional rights of the defendant that this indictment should be dismissed?

(3) Does the fact that two of the grand jurors were not residents of the county of Providence, but were actual residents of the county of Bristol when they were drawn, summoned, impaneled and sworn as members of said grand jury, deprive the defendant of his constitutional rights under sections 7 and 10 of article I of the constitution of the state of Rhode Island and thereby render this indictment invalid so that it should be dismissed?

(4) Are sections 11, 14, 18 and 35 of P. L. 1939, chap. 700 constitutional in so far as they authorize an indictment, which charges the commission of a capital or other infamous crime within the county of Providence, to be found and

returned by a grand jury on which there served, in the finding and returning of this indictment, a grand juror, who, at the time he was drawn, summoned, impaneled and sworn as a grand juror, resided and was domiciled in a town in the county of Bristol?

The four certified questions fall into two groups. Question (2) is substantially the same as question (1); and question (4) is substantially the same as question (3). We will first direct our attention to question (1).

Article I, sec. 7 of the constitution of Rhode Island provides that no person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury. The grand jury contemplated by our constitution is a grand jury as known at common law. *In re Opinion to the Governor*, 62 R. I. 200. Such a grand jury must be composed of not more than twenty-three members, all of whom must be duly drawn and qualified according to law, and at least twelve of such members must concur in order to return an indictment that will meet the requirements of the state constitution.

In the instant case, the defendant challenged each of eleven grand jurors on the same ground, namely, that each and all of them were not drawn and qualified according to law. The state concedes that if any one, and of course if all, of said grand jurors were not so drawn and qualified, then the indictment was not returned by a legal grand jury. Therefore, the controlling point in question (1) is whether the eleven persons challenged by the defendant, or any one thereof, were drawn and qualified for service as grand jurors in accordance with the law in force on September 18, 1939.

Public laws 1939, chap. 700, hereinafter called chap. 700, was passed by the legislature at its January session, 1939. The statute does not state the precise date when it was to take effect. But this is immaterial in the instant case, because the last possible date for it to become effective from the state's standpoint could not be later, in any

event, than May 19, 1939. The eleven grand jurors questioned were not sworn until September 18, 1939.

Chapter 700 provided for the appointment of a jury commissioner, with jurisdiction over the entire state, by the governor with the consent of a majority of the justices of the superior court. Such a jury commissioner was appointed on June 14, 1939 and took his engagement of office on July 10, 1939. A period of over two months intervened between the time when the jury commissioner took office and September 18, 1939, when the grand jury under consideration in this case was summoned, impaneled and sworn.

The nature and extent of the change effected by chap. 700 deserves close attention. Did said chapter merely amend an existing system for drawing and qualifying grand jurors, which system was thereafter continued in force, as amended, or did said chapter discard the existing system and substitute therefor an entirely different system for drawing and qualifying grand jurors from and after "the period ending on the second Monday in July 1939", as stated in the statute, when the regular term for the year 1938-1939 of the superior court for the county of Providence ended?

Our examination of these two statutes shows that in one particular the provisions of chap. 700 are the same as or similar to those in G. L. 1938, chap. 506. Both statutes leave to the town councils of the respective towns in this state the drawing of the names of persons liable for service as grand jurors from those towns. Here, the similarity ends. While said chap. 506 required that the list of names so drawn be certified to and be used by the clerk of the superior court for the county in which the town is located in summoning grand jurors from a town, chap. 700 requires that such list be certified to and be used by the jury commissioner in summoning such grand jurors.

The basic change in the law for drawing and qualifying grand jurors, which change, according to the defendant, is of vital importance in the instant case, relates to the draw-

ing and qualifying of grand jurors from the *cities* of the state. Under G. L. 1938, chap. 506, such grand jurors were drawn, investigated and caused to be summoned for service by the clerk of the superior court for the county in which a city is located. Chapter 700 prescribed that, after its enactment, grand jurors from cities should be drawn, investigated and caused to be summoned for service by the jury commissioner.

We deem it necessary to quote or summarize the following sections of chap. 700. Section 8 provides as follows: "The jury commissioner shall on the first Monday of May of each year beginning in 1939, *and at such other times as shall be necessary,* hold a public meeting or meetings in his office for the purpose of drawing jurors (meaning both grand and petit jurors) from the several cities pursuant to the provisions of this chapter. Notice of the time and place of such meeting shall be given by publication in at least one public newspaper published in each of the counties of Providence, Newport and Kent, for at least three days prior to such meeting: . . . ." (italics and parenthesis ours)

Section 9 concerns itself with the drawing of grand and petit jurors from the several towns of the state and with the certification of the names drawn in accordance therewith to the jury commissioner.

Section 15 provides as follows: "The persons whose names are drawn as provided in section 8 and 9 of this chapter shall be liable to serve as grand or petit jurors at any time during the year beginning on the second Monday in July next after such drawing . . . ."

Section 20, in its entirety, reads: "No person shall serve on any grand or petit jury in the courts of this state, unless he shall have been drawn as hereinbefore provided."

To avoid possible difficulties that might arise in changing the drawing and qualifying of jurors from the method in force before the enactment of chap. 700, the legislature made provision for a transition period in sec. 38 of that chapter, which is as follows: "Jurors required for service

in the courts of the state for the period ending on the second Monday in July 1939 shall be taken from the lists drawn in accordance with the law in effect on the day preceding the passage of this act. Provided, that if there are not a sufficient number of qualified jurors remaining on said lists *then the necessary additional jurors shall be drawn and qualified in section 14 of this act.*" (italics ours) Section 14 requires that additional jurors from towns shall be drawn by the town councils upon notification from the jury commissioner, and states: "The jury commissioner shall draw all such additional jurors required from the several cities . . . ."

Section 42 reads as follows: "Upon the appointment and qualification of the jury commissioner the duties imposed upon the clerks of the superior courts for the several counties with reference to the drawing and the qualifying of grand and petit juries shall be vested in the jury commissioner and the clerks of the superior courts for the several counties shall turn over to the jury commissioner appointed under this act, all books, papers, records and property in their possession or under their control by virtue of the provisions of law."

After carefully comparing chap. 700 with G. L. 1938, chap. 506, we are convinced that in enacting chap. 700, the legislature clearly intended to provide an entirely new system for the drawing and qualifying of jurors for service in the courts of this state. Chap. 700, which consists of twenty-two printed pages, is a complete act in itself. It is comprehensive in scope, minute in details, and mandatory in the expression of important provisions. It requires no assistance from any pre-existing provision of G. L. 1938, chap. 506 to carry out the intention of the legislature as expressed in said chap. 700. Except in the *drawing* of jurors from towns, the clear purpose of the legislature was to concentrate in a state jury commissioner all authority and responsibility in the matter of drawing jurors and of qualifying them for service in our courts.

We are of the opinion that, with the exception just noted, it was the clear intention of the legislature that the provisions of chap. 700 should be enforced by the jury commissioner. He was not confronted with any impossibility or even difficulty in executing the legislative intent as therein expressed. While the statute provides in sec. 8 for the drawing of grand and petit jurors from cities at a public meeting to be held by the jury commissioner on the first Monday in May of each year beginning in 1939, it also provides that such a meeting might be held "at such other times as shall be necessary" upon giving, by publication, at least "three days notice prior to such meeting." The jury commissioner, who qualified on July 10, 1939, obviously could not draw jurors at a public meeting to be held in May of that year, but it was clearly within his power to call a public meeting for such purpose at any time *after* July 10, 1939, upon giving the notice prescribed by this statute.

Chapter 700 expresses the will of the legislature in plain, mandatory language. Subject to the exception of the drawing of jurors from towns, the legislature plainly imposed the duty on the state jury commissioner, and on him alone, at least after the second Monday in July 1939, to draw jurors from cities and to qualify all jurors who could lawfully serve in our courts, either as grand or petit jurors.

If any doubt existed as to what the legislature intended to accomplish in enacting chap. 700, the legislature itself removed such doubt by inserting sec. 20 in the statute, where it said: "No person shall *serve* on any grand or petit jury in the courts of this state, *unless* he shall have been drawn as hereinbefore provided." (italics ours) Excepting the drawing of jurors from towns, the prior provisions of the chapter referred to in this section relate to the drawing of jurors from cities and to the qualifying of *all jurors by the jury commissioner*. There can be no misunderstanding of the language of sec. 20. It prohibited any person serving as a juror unless drawn and qualified in accordance with the terms of the statute.

Thus far we have confined ourselves to a consideration of chap. 700 to determine its purpose, meaning and scope. We will now direct our attention to the facts upon which the defendant rests its contention that all the eleven grand jurors in question, who acted as such on the grand jury which returned the indictment in the instant case, were not drawn and qualified according to law, thereby vitiating that indictment.

The factual situation is simple and may be briefly stated. It is undisputed that eleven of the twenty-two members of the grand jury under consideration were all residents and electors of cities in the county of Providence; that they were drawn and qualified as grand jurors from said cities by the clerk of the superior court for the counties of Providence and Bristol in May 1939; that such drawing and qualifying by said clerk was under G. L. 1938, chap. 506, and *prior* to the effective date of chap. 700; that the said eleven jurors were drawn and qualified by said clerk as aforesaid, and not by the jury commissioner under chap. 700; that all were summoned, impaneled and sworn as members of the grand jury which convened on September 18, 1939; and that they all served on said grand jury as members thereof continuously from September 18, 1939 to February 12, 1940, when said grand jury returned the indictment in the instant case, which indictment bears the signatures of the said eleven grand jurors drawn and qualified as aforesaid.

We may recall at this point that the jury commissioner qualified as such on July 10, 1939. It is undisputed that from the time he took office until September 18, 1939, when the grand jury which returned the indictment in the instant case was summoned, impaneled and sworn, he in no way complied with the provisions of chap. 700. Although appointed as jury commissioner under that act, which set forth his duties in great detail as to the drawing and qualifying of jurors, he failed to draw and qualify the eleven grand jurors under consideration in this case in accordance with

chap. 700 then in force, but took them from the list of persons liable to grand jury service who had been drawn and qualified by the clerk of the superior court under the preexisting law, G. L. 1938, chap. 506.

The provision in the constitution of this state that no person shall be held to answer for a capital or other infamous crime, unless on presentment or indictment by a grand jury, gives to an accused person the right to insist on the requirement that the indictment must have been found by a grand jury drawn according to law and legally competent to act for the purpose. An indictment, though apparently regular in form, which is not returned by legally drawn and qualified grand jurors is not an indictment within the meaning of the constitution. A person accused of crime is not bound to answer such an indictment, *if he reasonably, by proper procedure,* questions its validity.

With us, the proper mode by which a defendant may take advantage of a defect in the constitution of the grand jury, not apparent on the record, is by plea in abatement, or possibly by motion to quash, both the plea or motion to precede a plea of not guilty. *State* v. *Maloney,* 12 R. I. 251, 253. In *State* v. *Johnson,* 55 R. I. 350, at page 351, we said that, where a plea in abatement is sufficient in form and sets up facts, which, if true, would void the indictment, then the court is bound to give serious consideration to the defendant's claim, for it may involve the violation of a constitutional right of the defendant that the court is bound to protect.

In the instant case, the defendant seasonably and before entering a plea of not guilty, filed a plea in abatement and also a motion to quash the indictment, such plea and motion setting up facts which, according to the defendant, rendered the indictment invalid because it was presented by an illegal grand jury.

The importance of the question thus raised by the defendant has caused us to make an extended and careful examination of many authorities closely related in principle to the

point before us for determination. The underlying principle in all the authorities that have been cited to us or that we have examined in our own independent research is that, first and foremost, the statute must be construed to determine whether the provision or provisions under examination are mandatory or directory.

In this matter, as in all other instances of statutory construction, the prime object is to ascertain the intention of the legislature from a consideration of the entire statute, keeping in mind its language, its nature, and its object. Generally speaking, a statute which affects the public interests in the promotion of justice and prescribes the manner in which such public interests are to be promoted is held to be mandatory. Again, generally speaking, a statute may be construed as directory when the intention of the legislature can best be carried out by such a construction. But in reaching such a conclusion, the language of the legislature should be reasonably construed and no violence should be done to the ordinary meaning of the words which the legislature has used to express its intention.

Applying these well-established rules to chap. 700, we find that said chapter vitally affects the promotion of public justice and the rights of a person who may be accused of crime by indictment after its enactment. What was formerly a decentralized system for the drawing and qualifying of jurors under G. L. 1938, chap. 506, with power to exercise such functions vested in the clerk of the superior court for the respective counties in this state, was changed by chap. 700 into one centralized system, which vests the power to draw and qualify jurors, except for the drawing of jurors from towns, solely in one jury commissioner for the whole state. After the statute went into effect, and upon appointment and engagement of the jury commissioner, it was thereafter his responsibility, and his alone, to exercise the duties imposed upon him in accordance with the provisions of that statute.

The legislature thus apparently intended to centralize power and responsibility in the jury commissioner in furtherance of the public interests; and to insure order, regularity and impartiality in the matter of drawing jurors from the cities and of qualifying *all* jurors for service.

Chapter 700 also affected the right of a person who might be accused of crime by indictment. This right is that such a person shall not be called upon to answer any indictment returned by a grand jury whose members have not been drawn and qualified by the jury commissioner in accordance with such statute. An indictment returned by a grand jury which is not so constituted, whether in whole or in part, is not an indictment returned according to law. The violation of this right is not a mere irregularity or question of form, but a matter of substance.

After carefully considering chap. 700 in all its aspects, we are of the opinion that, at least in so far as it relates to the drawing and qualifying of grand jurors from the cities of this state by the jury commissioner, which is the primary question now under consideration, the provisions of this statute are mandatory and not directory. We find no escape from this conclusion in view of the positive language of sec. 20, where the legislature expressly prohibits a person from *serving* on any grand or petit jury in the courts of this state, *unless* he shall have been drawn and qualified as prescribed in such statute. This prohibition, expressed in terms that admit of only one interpretation, cannot be explained away or ignored. Manifestly a person not so drawn and qualified cannot be a grand juror under the law.

By the great weight of authority, as found by us, an indictment returned by a grand jury whose members, or any portion thereof, are not drawn and qualified in accordance with the provisions of a mandatory statute is invalid. It may be otherwise if the defect complained of consists in the non-observance, by accident or mistake, of the strict letter of some directory provision in a statute relating to the drawing and

qualification of grand jurors. Even in this instance, an intentional nonobservance of the statute will not be countenanced.

It is obviously impracticable for us to refer to all the authorities that we have examined, but we deem it necessary to mention and discuss a number of cases that, directly or indirectly, most pertinently support the views that we express in this opinion.

We will first direct our attention to our own reported cases. In *State* v. *Davis*, 12 R. I. 492, the defendant pleaded in abatement to an indictment that one of the grand jurors, who was drawn from the city and county of Providence, was not qualified to act as a grand juror because, under the statute then in force, he was not qualified to vote on any proposition to impose a tax or for the expenditure of money in said city or in any town in the county. The state demurred to defendant's plea and the demurrer was sustained. Upon bill of exceptions, this court ordered the indictment quashed on the ground of noncompliance with a statute that superseded the common law. This case established the principle, at least for this jurisdiction, that if one member of a grand jury was not qualified when drawn, then the indictment is subject to a plea in abatement and will be quashed.

The seriousness of a defect in the constitution of a grand jury was again recognized in *State* v. *Mellor*, 13 R. I. 666. In that case the objection was to the form of the notification to the grand juror. The court, while holding that error merely in the form of notification could be taken advantage of by the grand juror but not by the defendant, pointed out, however, the difference between the defect that it was then considering and a defect in the drawing of grand jurors, saying, at page 668 of the opinion: "The cases cited for the defendant mostly turned, not on defects of notification, but on defects in the drawing or selection of the jurors, *which is a very different matter, directly affecting the constitution of the jury*." (italics ours)

In *State* v. *Congdon*, 14 R. I. 267, an indictment for murder was quashed because a member of the grand jury which

returned the indictment was not a legal grand juror in that he was not in fact qualified to vote on a proposition to impose a tax or for the expenditure of money, even though his name appeared as so qualified on the voting lists. In *State v. Duggan,* 15 R. I. 412, the same question was attempted to be raised as in the *Congdon* case, but the court rested its decision on the fact that the defendant's plea in abatement did not allege wherein the challenged juror was not qualified.

In *State* v. *Mead,* 15 R. I. 416, the defendant pleaded in abatement to an indictment alleging that two persons were drawn as grand jurors, but that a third person prevented them from serving by presenting himself. The state demurred on the ground that the plea did not show that the two persons therein named were legally drawn as grand jurors. The court sustained the demurrer for the reason that the two persons named were drawn seven weeks before the term of the court in which the indictment was returned and therefore were illegally drawn, as the statute required the town council to draw the grand jurors at a meeting "not more than six weeks" previous to each term of the court.

In *State* v. *Fidler,* 23 R. I. 41, the defendant alleged in his plea in abatement that two members of the grand jury were not selected from the list of grand jurors drawn from their town in the order in which their names appeared on said list, as required by statute. The court sustained the state's demurrer to this plea because it found that the jurors in question were properly qualified. The court then held that a taking of those names out of the precise order of the list, by accident or mistake, "it not being claimed that there was any intentional wrong or misconduct in the matter", was an irregularity violating a directory provision of the statute and therefore did not vitiate the indictment. Even under such view of the statute, the court, at page 44 of the opinion, says: "And we do not wish to be understood as for a moment countenancing any intentional non-observance of the strict letter of the statute relating thereto."

The above are all the reported cases in this state that are pertinent on the point under consideration. They support the following conclusions: That it is essential to the validity of an indictment that all the members of a grand jury returning the indictment be drawn and qualified in the manner provided by law; that if a grand jury is not organized in accordance with the requirements of a mandatory statute prescribing the manner in which the members of the grand jury shall be drawn and qualified, such grand jury is not a legally constituted body and an indictment found by it will be quashed as invalid, when objection to it is seasonably and properly made; and finally, that an indictment returned by a grand jury, any of whose members was drawn or qualified by a person other than the one designated by law, is to be held invalid, when seasonably and properly challenged.

Our examination of decided cases in other jurisdictions leads to the same result. In *Clare* v. *State*, 30 Md. 163, the statute provided that the names of persons qualified to serve as grand jurors should be drawn at a meeting of the judges in Baltimore county. A list of names was prepared by a deputy clerk of court and he submitted such list to the judges separately, each of whom approved it without consultation with the others. The court held that the failure of the judges to meet and select the names of the grand jurors at a *meeting* of the judges vitiated an indictment found by the grand jurors selected in this manner.

In *Dunn* v. *United States*, 238 Fed. 508, the statute required that the members of a grand jury be drawn by the clerk of the court and the jury commissioner. The members of the grand jury that returned the indictment in question were actually drawn by a deputy clerk of the court and the jury commissioner. The court, in holding the indictment invalid, at pages 511 and 512 of the opinion, says: "The statute designates the officials who are to select the names to be drawn from for jury service. A body made up of persons not so selected is not the grand jury contemplated by the law. . . . The court is not vested with a discretionary power

to dispense with a compliance with an essential feature of a safeguard prescribed by law."

Because members of a grand jury were drawn by an unauthorized person, the same result was reached in *State* v. *Taylor,* 43 La. Ann. 1131, notwithstanding a Louisiana statute which provided that no irregularity in drawing or selecting members of a grand jury should avoid an indictment found by a grand jury, unless fraud had been practiced or some great wrong done to the defendant thereby. This case was followed in *State* v. *Clavery,* 43 La. Ann. 1133. Other cases to the same effect are *State* v. *Williams,* 5 Porter (Ala.) 130; *Dutell* v. *State,* 4 G. Greene (Ia.) 125; *Burley* v. *State,* 1 Neb. 385; *State* v. *Conway,* 35 La. Ann. 350.

A case involving the principle underlying the instant case is *Warren* v. *State,* 128 Texas Crim. R. 142 (1935). A statute providing that grand jurors could be drawn by the sheriff was amended to the effect that when grand jurors were required, the sheriff should summon a jury commissioner selected by the court, and the jury commissioner should draw the grand jurors. The grand jury that found the indictment in question was drawn by the sheriff under the original statute, and not by the jury commissioner, as the amended statute prescribed. In quashing the indictment after a conviction for murder, the court, at pages 145 and 146 of the opinion, says: "The manner of the organization of a grand jury is deemed of such importance by the legislative department of our government as that it devoted an entire chapter of our Code of Criminal Procedure to providing in detail for such organization. In the observance of many of the articles of said chapter, persons in jail and suspected of crime, as well as the general public, are directly interested. . . . We do not think it a safe or sound rule in a case such as this to say that the accused has not shown injury, when it appears that a plain mandate of the statute has been disregarded in as grave and important a matter as the selection of a grand jury . . . ."

The strictness with which courts demand compliance with constitutional or statutory provisions relating to the drawing and qualifying of grand jurors is shown in *State* v. *Anderson,* 5 W. W. Harr. (35 Del.) 407. There the statute provided that grand jurors should be drawn by jury commissioners who should, in December of each year, draw *twenty-four* grand jurors for each county, to serve during the ensuing year. In December 1932, the jury commissioners for New Castle county drew grand jurors for the year 1933. On March 9, 1933, at 4:10 p. m., a grand jury so constituted returned the indictment in question.

On that same day, an amendment to the constitution of Delaware became effective at 3:10 p. m. This constitutional amendment provided that grand juries in New Castle county should consist of fifteen members, to be taken one each from the fifteen representative districts of the county, the affirmative vote of nine being necessary to indict. The court quashed the indictment, and, at page 413 of its opinion, says: "These changes, (in the constitution) effective as of March 9, 1933, necessarily resulted in the establishment as of that date of the requirements of a lawful Grand Jury. A Grand Jury not constituted in conformity therewith must have been unlawful." (parenthesis ours)

See also the following cases: *Finley* v. *State,* 61 Ala. 201, 206; *Bruner* v. *Superior Court,* 92 Cal. 239; *State* v. *Bradley,* 48 Conn. 535, 545; *Woodward* v. *State,* 33 Fla. 508; *Taylor* v. *State,* 117 Fla. 706; *Marsh* v. *People,* 226 Ill. 464; *People* v. *Mack,* 367 Ill. 481; *State* v. *Brandt,* 41 Ia. 593; *Commonwealth* v. *Brown,* 147 Mass. 585; *Avirett* v. *State,* 76 Md. 510; *Stokes* v. *State,* 24 Miss. 621; *State ex rel. Clark* v. *District Court,* 86 Mont. 509; *State* v. *Lauer,* 41 Neb. 226, 230; *Ellis* v. *State,* 81 Neb. 284; *Nicholls* v. *State,* 5 N. J. L. 539, 543; *Hulse* v. *State,* 35 Ohio St. 421; *State* v. *Fellows,* 49 So. Dak. 481; *State* v. *Johnson,* 50 So. Dak. 388; *Thorp* v. *People,* 3 Utah, 441; *Ex parte Farley,* 40 Fed. 66; *Ex parte Harlan,* 180 Fed. 119, 128; *Doss* v. *State,* 220 Ala. 30, 123 So. 231.

The question of the invalidity of an indictment because of improper drawing or qualification of grand jurors, which has been considered from time to time by different state courts, came before the United States Supreme Court in *Crowley* v. *United States,* 194 U. S. 461. The indictment in that case was returned to the district court of the United States for the district of Porto Rico at a session of that court that convened on April 8, 1901. Prior to April 1, 1901, the laws of Porto Rico contained no provision with reference to the qualifications of grand jurors. A statute of Porto Rico which went into effect on April 1, 1901 prescribed the qualifications of grand jurors.

It appears that eight of the twelve grand jurors who returned the indictment in that case were summoned before April 1, 1901, and four were summoned after that date. The four summoned after April 1, 1901, did not possess the qualifications prescribed by the statute. The defendant filed a plea in abatement on this ground and the United States demurred thereto. The demurrer was sustained. On *certiorari,* after trial and conviction of the defendant, the supreme court of the United States reversed the judgment and remanded the case with direction to overrule the demurrer to the plea in abatement.

In support of its demurrer, the United States relied on a federal statute of long standing, which provided that an indictment found and returned by a grand jury in any court of the United States should not be deemed insufficient, nor should any trial, judgment or other proceedings thereon be affected by reason of any defect or imperfection in matter of form only, which would not tend to prejudice the defendant. The court dismissed the government's contention based on this statute by saying, at page 474 of the opinion: "This section can have no bearing on the present case, for the disqualification of a grand juror is prescribed by statute, and cannot be regarded as a mere defect or imperfection in form; *it is matter of substance which cannot be disregarded without prejudice to an accused."* (italics ours)

In the instant case, the language of chap. 700 and the overwhelming weight of authority on the question presented for determination make it impossible for us to arrive at any other conclusion but that the provisions of said chapter, with reference to the drawing and qualifying of jurors, were clearly mandatory; that those provisions imposed a duty upon the jury commissioner alone to draw and qualify all jurors from the *cities* in this state; and that he failed completely to comply with the legislative mandate in those particulars between July 10, 1939, when he took office under the statute, and September 18, 1939, when the grand jury that returned the indictment in this case was summoned, impaneled and sworn, although sec. 8 of the statute expressly vested in him the power to hold a public meeting for the purpose of drawing grand jurors, on relatively short notice, "at such times as shall be necessary." Such noncompliance, having been seasonably and properly brought to the attention of the court, was fatal to the validity of the indictment in the instant case.

For the reasons above stated, we are of the opinion that the indictment in this case is invalid and should be quashed. Our answer to questions (1) and (2), applied to each indictment before us, is, therefore, in the affirmative. In the circumstances, it becomes unnecessary for us to consider and answer questions (3) and (4).

The papers in each case, with our decision certified thereon, are remanded to the superior court for further proceedings.

*John H. Nolan,* Attorney General, *John E. Mullen,* Assistant Attorney General, for State.

*Hurley, Moriarty & Connly, George Hurley, Walter V. Moriarty, John W. Moakler, Jr., William S. Flynn,* for defendants.