## State *vs.* Stanley M. Kieon *et al.*

JUNE 30, 1959.

Present: Condon, C. J., Roberts, Paolino and Frost, JJ.

ROBERTS, J. This is an indictment charging Stanley M. Kieon and Walter A. Sito with robbery. After the demurrer of the state to certain pleas in abatement was sustained, the defendants were tried before a jury in the superior court and were found guilty. The case is here on each defendant's bill of exceptions. Hereinafter, unless otherwise specified, the term "defendants' exceptions" or terms of a similar tenor will refer to the exceptions of each defendant, singly and collectively.

It appears from evidence adduced by the state that on the evening of April 19, 1957 Thomas Bannister, who was employed as a manager of a market located on Reservoir avenue in the city of Cranston, parked his car near a restaurant on Park avenue in that city for the purpose of making a delivery of merchandise. Bannister testified that as he left his car two men holding their hands in their coat pockets approached him. He identified them as the defendants. According to Bannister, they took his keys and forced him to re-enter his car and lie on the floor at the rear seat. He was then compelled by them to identify which of his keys opened the lock of the door and to disclose to them the combination of the market safe. The defendants then drove the car back to the market.

Upon arriving at the market one of the defendants entered the store but returned after a few minutes to report

that he could not open the safe. The two defendants then took Bannister into the store with them and compelled him to open the safe. One of the defendants took the money which was in the safe while the other took Bannister's eyeglasses which he did not return to him. Upon leaving the store they took Bannister into an adjoining field where they bound and gagged him. A short time later Bannister succeeded in freeing himself and went to a nearby house where a telephone call was made to the police.

About the same time a Cranston police officer was making a routine check of the premises at the rear of the market. While so doing he came upon the defendant Kieon, who was crouching behind Bannister's car. The patrolman took Kieon into custody and sometime later Sito was arrested in Pawtucket.

After their arraignment defendants filed certain pleas in abatement wherein they prayed that the indictment be quashed. In one of these pleas they contended that the grand jury was illegally constituted because the list from which it was drawn did not contain the names of certain persons qualified for jury duty who should have been included upon said list. The demurrer of the state to this plea was sustained, and defendants' first exception was taken to this ruling of the trial justice.

The members of the grand jury who returned the instant indictment were drawn from a list of grand jurors prepared between April 15 and May 1, 1956 and constituted what is hereinafter referred to as the 1956 list. The list had been prepared in accordance with the provisions of public laws 1950, chapter 2450.

This chapter provided, among other things, that certain classes of persons were automatically exempted from jury duty and that other specified classes were given the right to be exempt from jury duty by making a claim in writing for such exemption. It is not disputed that a number of persons had claimed optional exemption from jury duty as

provided in the statute and that the names of persons so exempted did not appear on the 1956 list.

· On May 6, 1957 the legislature amended the law relating to the selection of jurors by enacting P. L. 1957, chap. 124. Under this statute several classes of persons who, under the terms of the prior statute, had been entitled to claim exemption from jury duty were deprived of that right. It is clear that after the enactment of this amendatory legislation more persons were subject to compulsory jury duty than were subject to such duty under the law as it stood when the 1956 list was prepared.

On June 3, 1957 the grand jury which returned the instant indictment was drawn from the 1956 list. It is not disputed that no names had been added to that list of 1956 as a result of the passage of P. L. 1957, chap. 124.

The defendants contend that they were entitled to have the grand jury drawn from a list of potential grand jurors constituted in accordance with the law in effect at the time, that is, chap. 124. They argue that persons who had been exempted at their own request when drawn from the 1956 list should have been placed on the list upon the passage of chap. 124, which deprived such persons of their right to exemption. The gist of the argument is that at the time the grand jury was drawn the defendants were entitled to have the list from which it was drawn contain the names of those who had claimed exemption from jury duty when the list was being prepared in 1956.

The defendants contend that the position which they thus take is sustained by the decision of this court in the case of *State* v. *Muldoon*, 67 R. I. 80. In that case several defendants had been indicted for conspiracy in indictments returned on February 12, 1940 by a grand jury drawn on September 18, 1939. The law governing the drawing of grand jurors had been amended so as to require that those who would be selected to serve as grand jurors from the cities of the state were to be drawn and summoned for duty

**324**

by a jury commissioner. Prior to that amendment those selected from the cities as well as the towns had been drawn by the clerk of the superior court for the county in which they resided. It was not disputed in that case that eleven members of the grand jury which returned the indictment had been drawn from the cities of the state by the clerk of the superior court.

We are of the opinion that there is a substantial distinction between *State* v. *Muldoon* and the instant case. In that case the court stated at page 88: "* * * the legislature clearly intended to provide an entirely new system for the drawing and qualifying of jurors for service in the courts of this state." It was legislation mandatory in character, and the legislature in enacting it intended to discard the existing system and to substitute therefor an entirely different one for drawing jurors from the cities. It is equally clear that the jury commissioner did not comply with the mandate of the statute, although he was in office for some sixty days prior to the time when the jury in question was impaneled. As a result of the jury commissioner's noncompliance with the statute, those jurors drawn from the cities were illegally on the panel and it is clear that they were not qualified to serve on the jury at the time they were sworn.

The intent of the legislature in the instant case was only to withdraw from certain classes of persons summoned for jury duty the optional right to claim exemption from such service. They did not intend to discard the system then in effect for the drawing of grand jurors and to substitute therefor an entirely new system. The preparation of new lists was not contemplated. In such circumstances it is clear that all of those who served on the panel which returned the instant indictment were qualified to serve at the time they were sworn. In our judgment this fact distinguishes the instant case from the *Muldoon* case.

The true nature of defendants' claim is that the names of certain individuals should have been included in the 1956 list at the time this panel was drawn. The answer thereto is contained in the case of *Andrews* v. *R. I. Hospital Trust Co.*, 44 R. I. 118. In that case this court stated at page 119:

> "The appellants do not claim that the jury impaneled to try their appeals was not fair and impartial and it does not appear that the appellants were prejudiced in any way by the manner in which said jury list was made up. It has been held by this court that 'a party has no vested interest in the selection of a particular juror,' nor can he demand that a juror shall be a resident of any particular city or town of the county, for if he receives an impartial trial that is all he can require and with that he must be content. *McHugh* v. *R. I. Co.*, 29 R. I. 206; *Stevens* v. *Union R. R. Co.*, 26 R. I. 90; *Fiske* v. *Paine*, 18 R. I. 632 * * *."

It is true that in the *Andrews* case the court was considering the selection of a petit jury list for use in civil as well as criminal cases, but we are of the opinion that the reasoning therein is equally applicable to the selection of a list from which grand juries are to be drawn. In *State* v. *Fidler*, 23 R. I. 41, a case wherein the court was considering alleged irregularities in the selection of potential grand jurors, the court said at page 45: "We think an indictment ought not to be set aside for mere irregularities in the selection of the grand jury, except in those cases where there has been such a departure from the requirements of the statute as to affect the substantial rights of the defendant." We are of the opinion that in the instant case no substantial right of the defendants was impaired by the absence from the jury list of the names of those who were treated as being exempt. The defendants' exception numbered 1 is overruled.

The defendants' exception numbered 2 was taken to a denial by the trial justice of their motion to file additional special pleas at the opening of the trial. Upon examination, their position appears to be that already discussed in con-

nection with their exception numbered 1 and has already been answered in the quotation set out above from *State* v. *Fidler*. Therefore defendants' exception numbered 2 is overruled.

The defendant Sito is also pressing exception numbered 4, which was taken to a denial by the trial justice of his motion for a separate trial. It is well established that a motion for a separate trial by a co-defendant is within the discretion of the trial justice and that the denial of such a motion is not a sufficient reason for ordering a new trial in the absence of a showing of prejudice. *State* v. *Ballou*, 20 R. I. 607; *Anthony* v. *State*, 2 R. I. 305. The defendant Sito argues that he was prejudiced by the denial of his motion. We have examined the argument to that effect and in our opinion it is without merit. Exception numbered 4 is overruled.

When the prospective jurors were brought together for the purpose of impaneling the jury, defendants moved that these jurors be placed under oath and examined for the purpose of determining whether they stood indifferent in the cause. The defendants' exception numbered 5 was taken to a denial of this motion by the trial justice. Their motion was made orally, counsel saying: "* * * I would like to make a motion that the jurors who are called be placed under oath individually and questioned as to whether or not they know any parties in the case, whether or not they have any knowledge of the case, or whether or not they have any reason for bias or prejudice."

The trial justice thereupon denied the motion from the bench. He said in substance that he did not consider it important whether the jurors were examined individually or in a group, but that he would permit counsel for defendants to examine prospective jurors individually and stated that he was of the opinion that the subject matter of the motion was within his discretion. The defendants were granted an exception to the denial of their motion. From an examina-

tion of the record it appears that the clerk then proceeded to call a panel of jurors. We infer this from the fact that the assistant attorney general addressed the panel in the plural. Thereafter counsel for defendants were permitted to examine the prospective jurors collectively and in some instances individually. However, a close scrutiny of the transcript fails to reveal the administration of an oath to the jurors for the purpose of examination on the *voir dire*. The defendants argue that the state of the record is correct and that the prospective jurors were not placed under oath for the *voir dire* and that such omission constitutes reversible error.

General laws 1956, §9-10-14, provides as follows:

> "The court shall, on motion of either party in a suit examine on oath a person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed an opinion, or is sensible of any bias or prejudice therein; and the party objecting to the juror may introduce any other competent evidence in support of the objection. If it appears to the court that the juror does not stand indifferent in the cause, another shall be called in his stead for the trial of that cause."

Under this fifth exception defendants contend that they were prejudiced by the trial justice's failure to administer the oath for the *voir dire* to the prospective jurors. This raises a narrow issue. We are not thereby required to construe the provisions of the statute in question as a whole. Rather the issue is whether the provision above quoted which refers to the administration of an oath to prospective jurors is mandatory or directory in nature. We are of the opinion that if the character of the statute is mandatory then the omission by the court to put the prospective jurors under oath does constitute reversible error.

In discussing statutory construction, this court stated in the case of *State* v. *Muldoon, supra,* at page 92: "Generally speaking, a statute which affects the public interests in the

promotion of justice and prescribes the manner in which such public interests are to be promoted is held to be mandatory." In the statute under consideration the pertinent provision provides that the prospective jurors be put under oath for the *voir dire* examination. Obviously the legislature intended to compel them to testify truthfully as to matters which would require their excuse for cause or their removal by peremptory challenge. It cannot be questioned that it is in the public interests to secure the services of impartial juries. It is also clear that justice is promoted by a statute which enables counsel to judiciously and effectively exercise their peremptory challenges.

Therefore it is our opinion that the statute in question affects the public interests and the promotion of justice and that the provision contained therein relating to the administration of the oath to prospective jurors is mandatory when applied for by a party as provided in the act. In the case of a prospective juror who for reasons of conscience objects to giving oath, compliance with the statutory provision may be had if such juror is permitted to affirm. There being nothing in the record to indicate that the prospective jurors in the instant case were put under oath on defendants' motion, we are constrained to hold that this omission to comply with the provisions of the act constituted reversible error. See *Robinson* v. *Howell,* 66 S. C. 326.

Because of the view which we take on the defendants' exception numbered 5, it will be unnecessary for us to consider the remaining exceptions briefed and argued by the defendants.

The defendants' exception numbered 5 is sustained, and the case is remitted to the superior court for a new trial.

*J. Joseph Nugent,* Attorney General, *Francis J. Fazzano,* Assistant Attorney General, for State.

*Edward L. Gnys, Jr.,* for defendant Stanley M. Kieon.

*Raymond A. LaFazia,* for defendant Walter A. Sito.